UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

2014 Maserati Ghibli
VIN: ZAM57RTA7E1087449, *et al.*

      Defendants *in rem*.

_____/

Civil Case No.

Honorable

# COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff, the United States of America, by and through DANIEL L. LEMISCH, Acting United States Attorney for the Eastern District of Michigan, and PAUL A. KUEBLER, Assistant United States Attorney, and states upon information and belief in support of this Complaint for Forfeiture *in rem* that:

## JURISDICTION AND VENUE

1. This is an *in rem* civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6).

2. The Court has original jurisdiction over this proceeding pursuant to 28 U.S.C. § 1345 as this action is being commenced by the United States of America as Plaintiff.

3. This Court has *in rem* jurisdiction and venue over this forfeiture action, pursuant to 28 U.S.C. § 1355(b)(1)(A), as the acts giving rise to the forfeiture occurred in the Eastern District of Michigan.

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in the Eastern District of Michigan.

5. Venue is also proper before this Court pursuant to 28 U.S.C. § 1395(b), as the defendants *in rem* were found and seized in the Eastern District of Michigan.

## DEFENDANTS *IN REM*

6. The Defendants *in rem* consists of:

   a. 2014 Maserati Ghibli VIN: ZAM57RTA7E1087449 seized from 946 Ector Run NW, Kennesaw, Georgia on December 2, 2015, pursuant to execution of a federal search warrant by U.S. Drug Enforcement Administration ("DEA") agents (hereinafter "2014 Maserati Ghibli");

   b. Assorted jewelry valued at $55,435 seized from 946 Ector Run NW, Kennesaw, Georgia on December 2, 2015, pursuant to execution of a federal search warrant by DEA agents (hereinafter "Ector Run Jewelry");

    c. 2013 Assembled Custom Motorcycle VIN: CA969216 seized from 20797 Masch, Warren, Michigan on December 2, 2015 pursuant to execution of a federal search warrant by DEA agents (hereinafter "2013 Assembled Custom Motorcycle"); and

    d. 1976 Cadillac Seville VIN: 6S69R6Q501613 seized from 8601 West Parkway Street, Detroit, Michigan on December 2, 2015 pursuant to execution of a federal search warrant by DEA agents (hereinafter "1976 Cadillac Seville").

7. The Defendants *in rem* are currently in the custody of the United States Marshals Service.

## STATUTORY BASIS FOR CIVIL FORFEITURE

8. Title 21, United States Code, Section 881, governs the civil forfeiture of property which constitutes or is derived from the proceeds of narcotics crimes, or which was used to facilitate narcotics crimes:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them….[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(6).

9. Title 31 of the United States Code, Section 5317(c)(2), provides for the civil forfeiture, pursuant to 18 U.S.C. Section 981(a)(1)(A), of:

> Any property involved in a violation of section. . .5324 of this title [structuring transactions], or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy . . . .

31 U.S.C. § 5317(c)(2).

The elements of a structuring transaction are:

a) A currency transaction at or with a domestic financial institution;

b) Knowledge that the financial institution was legally obligated to report currency transactions in excess of $10,000; and

c) Intent to evade this reporting requirement.

10. Title 18, United States Code, Section 981(a)(1)(A) provides for the civil forfeiture to the United States of, "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property." 18 U.S.C. § 981(a)(1)(A).

11. Title 18, United States Code, Section 981(a)(1)(C) provides for civil forfeiture to the United States of, "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)." 18 U.S.C. § 981(a)(1)(C).

12. Title 18, United States Code, Section 1956, prohibits the laundering of monetary instruments:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity
>
> \*\*\*
>
> (B) knowing that the transaction is designed in whole or in part
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity
>
> \*\*\*

18 U.S.C. § 1956(a)(1)(B)(i).

Title 18, United States Code, Section 1957, provides, in part:

> (a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).
>
> \*\*\*
>
> (f) As used in this section
> (1) the term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument (as defined in section 1956(c)(5) of this title) by, through, or to a financial institution that would be a financial transaction under section 1956(c)(4)(B) of this title, but such term does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution;

> (2) the term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense; and
>
> (3) the terms "specified unlawful activity" and "proceeds" shall have the meaning given those terms in section 1956 of this title.

18 U.S.C. § 1957(a) and (f).

13. The "felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States" is a "specified unlawful activity." 18 U.S.C. §§ 1956(c)(7) and 1961.

## FACTUAL BASIS FOR CIVIL FORFEITURE

14. There is evidence that the Defendants *in rem* are subject to forfeiture to the United States pursuant to

   a) 21 U.S.C. § 881(a)(6) as moneys or things of value furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange and/or moneys and/or negotiable instruments used or intended to be used to facilitate such an exchange in violation of Title 21 of the United States Code; and/or

   b) 18 U.S.C. § 981(a)(1)(A) as property involved in a Structuring violation (31 U.S.C. § 5324), or any conspiracy to commit any such

violation, and/or as property traceable to any such violation or conspiracy; and/or

c) 18 U.S.C. § 981(a)(1)(A) and/or (a)(1)(C) as proceeds traceable to the proceeds of and/or as property involved in, or traceable to property involved in, Money Laundering (18 U.S.C. §§ 1956 and/or 1957).

15. Facts supporting these determinations include, but are not limited to, the following:

**Brian Brown, Akia Brown and Sabrina Lewis**

a. Since approximately February 2014, DEA agents have been investigating a drug trafficking organization known as the Brian Brown Drug Trafficking Organization ("DTO"). The DTO is an organization whose members and associates engage in the distribution of controlled substances, primarily heroin, throughout the United States.

b. Agents are aware that Brian Brown ("BRIAN BROWN") has a known criminal history that includes a 1999 arrest and conviction for Conspiracy and Possession with Intent to Deliver Cocaine in the Eastern District of Michigan for which he was sentenced to 120 months' confinement. BRIAN BROWN was released from prison in

7

      2010 and, until November 2015, was on Supervised Release in the Eastern District of Michigan.

c.   On August 1, 2012, while on Supervised Release, BRIAN BROWN was detained by members of the Detroit Police Departments Narcotics Division inside a residence located at 4000 Fullerton, Detroit, Michigan. Inside the residence, officers located and seized 1,095 grams of heroin, three firearms, $2,365 in cash and three motorcycles. At the time of the detaining and seizure, BRIAN BROWN had been paying utilities at the residence and owned the residence since 2011.

d.   Akia Brown ("AKIA BROWN") is the wife of BRIAN BROWN.

e.   Sabrina Lewis ("LEWIS") is an acquaintance of BRIAN BROWN.

### Residences

f.   946 Ector Run NW, Kennesaw, Georgia is a residence used by BRIAN BROWN and AKIA BROWN. AKIA BROWN subscribed to the utilities at this residence using her personal information. Agents also observed several vehicles registered to BRIAN BROWN and AKIA BROWN parked at the residence. Social media posts also depict AKIA BROWN at the residence.

g. 20797 Masch, Warren, Michigan is a residence used by BRIAN BROWN and AKIA BROWN. BRIAN BROWN and AKIA BROWN have Michigan driver's licenses bearing this address.

h. 8601 West Parkway Street, Detroit, Michigan is a residence used by BRIAN BROWN and LEWIS. Real property documents indicate that this residence is titled to BRIAN BROWN and LEWIS.

### 2014 Seizures

i. In February 2014, agents learned that a drug trafficking organization needed a large amount of cash to be picked up from a narcotics distributor located in Detroit, Michigan. Based upon this information, an undercover agent posed as a money courier. The undercover agent communicated via cellular telephone with the suspected drug trafficker who utilized cellular phone number (310) 403-XXXX. On February 14, 2014, the undercover agent agreed to pick up, and on the same day did pick up, in Livonia, Michigan, approximately $236,900 in U.S. currency that was intended for delivery to Miami, Florida. Investigation revealed that BRIAN BROWN was the suspected drug trafficker coordinating the money drop with the undercover agent based upon physical surveillance, voice comparison and other analysis.

j.  On November 5, 2014, Michigan State Troopers conducted a traffic stop of a Cadillac DTS then registered to AKIA BROWN that was traveling southbound on I-75 towards Ohio. During a consent search of the Cadillac DTS, Michigan State Troopers located and seized $143,940 in cash in a hidden compartment in the rear of the vehicle.

k.  On November 24, 2014, a Gardena, California Police Department parking enforcement official towed a Nissan Altima that was in violation of a city ordinance. During a tow inventory of the vehicle, the parking enforcement officer discovered six kilograms of heroin in the trunk. An activation receipt for a Boost Mobile cell phone, among other items, was found inside the Nissan Altima. The receipt identified phone number (310) 678-XXXX and indicated that the phone number was activated on September 23, 2014. Phone location data revealed that from December 8, 2014 through December 9, 2014, the phone was located at 20797 Masch, Warren, Michigan.

l.  On January 20, 2015, Agents in Birmingham, Alabama executed a search warrant at a property in Birmingham, Alabama, which resulted in the arrest of Eric Young ("YOUNG") and the seizure of 2,457 grams of heroin and 866 grams of fentanyl. A financial analysis showed that in July 2014, YOUNG sent $1,076 from a Western Union

bank in Birmingham, Alabama to BRIAN BROWN at a Western Union bank in Hollywood, California.

## 2015 Seizures

m. On or about December 2, 2015, agents executed a search warrant at 946 Ector Run NW, Kennesaw, Georgia. Agents located and seized, among other items, the following:

a. Five cell phones;

b. Several computers;

c. 2014 Maserati Ghibli registered to BRIAN BROWN; and

d. Assorted jewelry valued at $55,435 ("Ector Run Jewelry").

n. On or about December 2, 2015, agents executed a search warrant at 20797 Masch, Warren, Michigan. Agents located and seized, among other items, the following:

a. 25 cellular phones and one pager;

b. Black tactical plate carrier vest; and

c. 2013 Assembled Custom Motorcycle registered to BRIAN BROWN.

o. On or about December 2, 2015, agents executed a search warrant at 8601 West Parkway Street, Detroit, Michigan. Agents located and seized, among other items, the following:

a. One (1) loaded handgun (previously reported stolen); along with a magazine containing bullets;

b. Suspected heroin;

c. One (1) large box containing a heat sealer, baggies, money counter and two digital scales;

d. Multiple cellular telephones;

e. Assorted jewelry valued at $5,200;

f. Buick Le Sabre containing a non-factory hidden compartment; and

g. 1976 Cadillac Seville registered to BRIAN BROWN ("1976 Cadillac Seville").

During an interview, LEWIS stated that she has had a romantic relationship with BRIAN BROWN since she was 18 years of age. LEWIS stated that she and BRIAN BROWN recently had a child together and the child and BROWN are the only people who reside at the residence. LEWIS stated that BRIAN BROWN gave her money to buy the residence. LEWIS stated that BRIAN BROWN purchased jewelry as birthday and Christmas gifts for her. LEWIS stated that the two vehicles parked in her garage both belonged to BRIAN BROWN and that he has stored them in the garage for several months.

**Financial Investigation**

p. BRIAN BROWN and AKIA BROWN have established numerous businesses, including BMB Records LLC of Detroit. Bank records indicate that BRIAN BROWN opened two bank accounts in the name of BMB Records LLC of Detroit – one ending in 0999 on June 11, 2013 and a second ending in 9784 on January 7, 2014. The mailing address for both bank accounts is 20797 Masch, Warren, Michigan. Approximately $1,000,000 in currency has been deposited in the two bank accounts from June 2013 through October 2015. Since January 1, 2015, there have been over $345,000 in cash deposits using ATMs in the Detroit and Baltimore areas. From March 2015 through October 2015, approximately $182,000 in cash was deposited into BMB Records' 9784 account using bank branches located in the Baltimore, Maryland area. All of the cash deposits were each under $10,000 and, over the five-month period, cash deposits were conducted on the same day using multiple bank branches. Each deposit was kept under $10,000, but by using multiple branches on the same or consecutive days, the total cash deposited was often in excess of $10,000.

q. Bank records indicate that on June 6, 2014, LEWIS exchanged $5,000 from $20 bills into $100 bills at a bank in Westland, Michigan and,

    later on this same date, LEWIS exchanged $3,200 from $20 bills into $100 bills at a bank in Dearborn Heights, Michigan. At the time of these exchanges, LEWIS' account was overdrawn by $64.50, but LEWIS did not deposit any of the exchanged cash into this account. Bank records also show that LEWIS opened at least two safe deposit boxes. On February 19, 2015, LEWIS opened a two-inch by five-inch safe deposit box at a bank in Detroit, Michigan. On March 3, 2015, Lewis opened a three-inch by ten-inch safe deposit box at another bank in Westland, Michigan.

r.     Records obtained from the Michigan Secretary of State show that from 2011 through 2015, BRIAN BROWN and AKIA BROWN have purchased or leased approximately twenty vehicles, including the 2014 Maserati Ghibli purchased by BRIAN BROWN on February 2, 2014 for $94,000.

s.     Tax records over several years reveal minimal reported income for both BRIAN BROWN and AKIA BROWN.

## **CLAIM**

16.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 15, and the subparagraphs thereunder.

17. The Defendants *in rem* are subject to forfeiture to the United States pursuant to:

a) 21 U.S.C. § 881(a)(6) as moneys or things of value furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange and/or moneys and/or negotiable instruments used or intended to be used to facilitate such an exchange in violation of Title 21 of the United States Code; and/or

b) 18 U.S.C. § 981(a)(1)(A) as property involved in a Structuring violation (31 U.S.C. § 5324), or any conspiracy to commit any such violation, and/or as property traceable to any such violation or conspiracy; and/or

c) 18 U.S.C. § 981(a)(1)(A) and/or (a)(1)(C) as proceeds traceable to the proceeds of and/or as property involved in, or traceable to property involved in, Money Laundering (18 U.S.C. §§ 1956 and/or 1957).

## **CONCLUSION AND RELIEF**

WHEREFORE, Plaintiff respectfully requests that a warrant for arrest of the Defendants *in rem* be issued; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment be entered declaring the Defendants *in rem* to be condemned and forfeited to the United States for disposition according to law; and that the United States be

granted such other further relief as this Court may deem just and proper together with costs and disbursements of this action.

                                      Respectfully submitted,

                                      DANIEL L. LEMISCH
                                      Acting United States Attorney

Dated: May 31, 2017        /s/ Paul A. Kuebler
                                      PAUL A. KUEBLER
                                      Assistant United States Attorney
                                      211 W. Fort Street, Suite 2001
                                      Detroit, Michigan 48226
                                      Phone: (313) 226-9641
                                      Email: paul.kuebler@usdoj.gov
                                      (NY Bar No. 4268561)

## VERIFICATION

I, Stephen Popp, state that I am a Special Agent with the U.S. Drug Enforcement Administration. I have read the foregoing Complaint for Forfeiture and declare under penalty of perjury that the facts contained therein are true and correct based upon knowledge possessed by me and/or upon information received from other law enforcement officers.

                                                 _____
                                                 Stephen Popp, Special Agent
                                                 U.S. Drug Enforcement Administration

Dated: May 30, 2017